1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SCOTT WARNER LEARNAHAM,

11           Plaintiff,                        No. 2:09-cv-01143 KJN

12      v.

13   MICHAEL J. ASTRUE, Commissioner
     of Social Security,
14
             Defendant.                        ORDER
15   _____/

16           Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") partially denying plaintiff's application for Disability Insurance

18   Benefits under Title II of the Social Security Act ("Act").[1]  (Dkt. No. 17.)  In his motion for

19   summary judgment, plaintiff alleges that the Administrative Law Judge ("ALJ") erred by finding

20   that plaintiff was "disabled" only as of February 11, 2008, and not as of October 5, 2005, the date

21   plaintiff contends is warranted by the medical opinion provided by one of plaintiff's treating

22   physicians, Dr. Bradley Jones.  Specifically, plaintiff alleges that the ALJ improperly rejected

23   portions of Dr. Bradley's medical opinion "without explanation or rationale."  The

24   _____

25        [1]  This case was referred to the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to
     proceed before a United States Magistrate Judge.  (Dkt. Nos. 7, 8.)  This case was reassigned to
26   the undersigned by an order entered February 9, 2010.  (Dkt. No. 19.)

                                              1

1   Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary

2   judgment.  (Dkt. No. 18.)

3             For the reasons that follow, the court will deny plaintiff's motion for summary

4   judgment, grant the Commissioner's cross-motion for summary judgment, and direct the Clerk of

5   Court to enter judgment in favor of the Commissioner.

6   I.      BACKGROUND[2]

7             Plaintiff was 47 years old on the alleged disability onset date, and was 50 years

8   old at the time that the ALJ's entered his decision partially granting plaintiff's application for

9   Disability Insurance Benefits.  (See Administrative Transcript ("AT") 20.)  Plaintiff attended

10  high school through the tenth grade and obtained a GED while serving in the United States Navy.

11  (AT 45.)  Plaintiff previously worked as an ordnance supervisor in the Navy, a warehouse

12  employee, and a cemetery groundskeeper/landscaper.  (AT 20, 45, 47-50, 114-17.)  On or about

13  August 2, 2005, plaintiff, who was then employed as a groundskeeper, ceased working due to

14  increasing low back pain that caused shooting pain down his legs and trouble with walking.

15  (AT 46-47, 50, 54.)  Plaintiff's back condition ultimately resulted in two surgeries.  (AT 50-51,

16  54.)

17         A.      Procedural Background

18             On July 10, 2006, plaintiff filed an application for Disability Insurance Benefits

19  alleging a disability onset date of August 2, 2005.  (AT 87-91.)  The Social Security

20  Administration denied plaintiff's application initially and upon reconsideration.  (AT 67-68.)

21  Plaintiff filed a request for a hearing before an ALJ, and the ALJ conducted a hearing regarding

22  plaintiff's claim on June 16, 2008.  (AT 40-66, 83.)  Plaintiff, who was represented by counsel at

23  the hearing, testified at the hearing.  A vocational expert also testified at the hearing.

24  _____

25         [2]  Because the parties are familiar with the factual background of this case, including
    plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
    facts related to plaintiff's impairments and medical history will be addressed only insofar as they
26  are relevant to the issues presented by the parties' respective motions.

                                            2

In a decision dated September 17, 2008, the ALJ granted plaintiff's application in part, concluding that plaintiff was not disabled until his fiftieth birthday, or February 11, 2008. (See AT 15-22.)  As discussed below, the ALJ determined that plaintiff was able to perform jobs that existed in significant numbers in the national economy until his fiftieth birthday, but that upon turning 50 years old, plaintiff was considered disabled by direct application of Medical-Vocational Rule 201.14.[3]  (AT 21-22.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  (AT 1-3.) Plaintiff subsequently filed this action.

---

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1          B.      Summary of the ALJ's Findings

2                  The ALJ conducted the required five-step, sequential evaluation and concluded

3      that plaintiff was disabled within the meaning of the Act, but only as of February 11, 2008.

4      (AT 22.)  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful

5      activity since August 2, 2005, the alleged date of onset.  (AT 17.)  At step two, he concluded that

6      plaintiff had the "severe" impairment of "degenerative disc disease."  (AT 17.)  At step three, the

7      ALJ found that plaintiff's did not have an impairment or combination of impairments that met or

8      medically equaled any impairment listed in the applicable regulations.  (AT 17.)

9                  The ALJ next assessed plaintiff's residual functional capacity ("RFC").  The ALJ

10     found that:

11              [T]he claimant has the residual functional capacity to perform sedentary
                work as defined in 20 CFR 4040.1567(a) except that he can lift, carry,
                push, and pull 15 pounds occasionally, and 10 pounds frequently.  The
12              claimant can sit for 8 hours, and stand and walk for 2 hours, in 30 minute
                increments, in an 8 hour day.  The claimant cannot use foot pedals.  He
13              can occasionally perform activities requiring overhead reaching, stooping,
                crouching, and kneeling.

14

15     (AT 17-18.)[4]  In reaching this conclusion, the ALJ also discounted plaintiff's statements

16     regarding the intensity, persistence, and limiting effects of his symptoms or impairments as not

17     fully credible.[5]  (AT 19.)

18                 At step four, the ALJ found that plaintiff's RFC precluded plaintiff from

19     performing his past relevant work as a munitions supervisor or landscape gardener.  (AT 20.)  At

20     step five, the ALJ drew a distinction between the period when plaintiff was age 47 through 49, or

21

22         [4]  With respect to the term "sedentary work," 20 C.F.R. § 1567(a) provides: "Sedentary
       work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
23     articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one
       which involves sitting, a certain amount of walking and standing is often necessary in carrying
24     out job duties. Jobs are sedentary if walking and standing are required occasionally and other
       sedentary criteria are met."

25
           [5]  Plaintiff does not challenge the ALJ's adverse credibility finding in his motion for
26     summary judgment.

                                                       4

1    a "younger individual" under the age categories provided in the applicable regulations, and when

2    plaintiff turned 50 years old and thus became "an individual closely approaching advanced age."

3    (AT 20.)  As to the former period, the ALJ found, relying on the testimony of the vocational

4    expert, that plaintiff could perform work as a "cashier II," an "information clerk," and a

5    document preparer, jobs which existed in significant numbers in the national economy.  (AT 21.)

6    However, the ALJ concluded that once plaintiff turned 50 years old, Medical-Vocational Rule

7    (also referred to as a Medical-Vocational Guideline) 201.14 directed a finding that plaintiff was

8    disabled.[6]  (AT 22.)  Accordingly, the ALJ found plaintiff disabled as of February 11, 2008, and

9    partially granted plaintiff's application for benefits.

10   II.    STANDARDS OF REVIEW

11              The court reviews the Commissioner's decision to determine whether it is (1) free

12   of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

13   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

14   Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

15   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

16

17       [6]  The Ninth Circuit Court of Appeals has described the Medical-Vocational Guidelines,
     or the "grids," which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2, as follows:

18              "The grids are applied at the fifth step of the analysis under 20 C.F.R. §
                404.1520, and present, in table form, a short-hand method for determining
19              the availability and numbers of suitable jobs for a claimant. [Tackett v.
                Apfel, 180 F.3d 1094, 1101 (9th Cir.1999).]  The grids categorize jobs by
20              their physical-exertional requirements, and set forth a table for each
                category.  A claimant's placement with the appropriate table is determined
21              by applying a matrix of four factors identified by Congress--a claimant's
                age, education, previous work experience, and physical ability.  For each
22              combination of these factors, they direct a finding of either "disabled" or
                "not disabled" based on the number of jobs in the national economy in that
23              category of physical-exertional requirements.  Id.  If a claimant is found
                able to work jobs that exist in significant numbers, the claimant is
24              generally considered not disabled.  Heckler v. Campbell, 461 U.S. 458,
                461, 103 S.Ct. 1952, 76 L.Ed.2d 66 . . . (1983)."

25
     Tommasetti v. Astrue, 533 F.3d 1035, 1043 n.4 (9th Cir. 2008) (modifications in original)
26   (quoting Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006)).

1   more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

2   reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc.

3   Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

4   1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

5   Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

6   credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews,

7   53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with

8   respect to resolving ambiguities in the medical evidence.").  Findings of fact that are supported

9   by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221

10  F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

11  denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222

12  (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir.2007)); see also Ryan v. Comm'r of

13  Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than

14  one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart,

15  400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a

16  whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

17  Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

18  2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

19  III.   ANALYSIS

20          Plaintiff's challenge to the ALJ's decision is relatively limited.  He contends that

21  the ALJ adopted some portions of Dr. Jones's medical opinion, provided in June 2008, regarding

22  plaintiff's functional limitations, but selectively rejected other portions "without any explanation

23  or rationale."  (Pl.'s Mot. for Summ. J. at 6.)  The Commissioner disagrees and contends that the

24  ALJ specifically rejected portions of Dr. Jones's opinion in favor of functional limitations

25  provided in a medical opinion offered by Dr. James Vogus, another treating physician, in May

26  2008.  (Def.'s Mot. for Summ. J. at 4-6.)  Plaintiff did not file a reply brief.

1          The medical opinions of three types of medical sources are recognized in social

2     security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but

3     do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

4     claimant (nonexamining physicians)." Lester, 81 F.3d at 830.  Generally, a treating physician's

5     opinion should be accorded more weight than opinions of doctors who did not treat the claimant,

6     and an examining physician's opinion is entitled to greater weight than a non-examining

7     physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by

8     another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the

9     treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical

10    opinion is contradicted by another doctor, the Commissioner must provide "specific and

11    legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by

12    substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ

13    can meet this burden by setting out a detailed and thorough summary of the facts and conflicting

14    clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533

15    F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  "The ALJ is

16    responsible for determining credibility and resolving conflicts in medical testimony."

17    Magallanes, 881 F.2d at 750; see also Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir.

18    1988) (affirming where the ALJ carefully detailed arguably conflicting clinical evidence and

19    provided reasons for crediting one treating physician's opinion over another treating physician).

20          As noted above, the ALJ formulated the following RFC for plaintiff:

21          [T]he claimant has the residual functional capacity to perform sedentary
            work as defined in 20 CFR 4040.1567(a) except that he can lift, carry,
22          push, and pull 15 pounds occasionally, and 10 pounds frequently.  The
            claimant can sit for 8 hours, and stand and walk for 2 hours, in 30 minute
23          increments, in an 8 hour day.  The claimant cannot use foot pedals.  He
            can occasionally perform activities requiring overhead reaching, stooping,
24          crouching, and kneeling.

25    (AT 17-18.)  Plaintiff contends that this RFC runs afoul of the Medical Source Statement, which

26    was completed by Dr. Jones on June 6, 2008.  (AT 312-15.)  Plaintiff contends, although with

7

1    minimal elaboration, that the ALJ: (1) failed to adopt Dr. Jones's assessment that plaintiff could

2    sit for a maximum of only two hours in a seven-hour workday; (2) "ignored the 1 hour resting;"

3    (3) "ignored the preclusion of posturals by the doctor;" and (4) ignored the onset date of

4    plaintiff's limitations, which Dr. Jones estimated to be October 5, 2005.  (Pl.'s Mot. for Summ. J.

5    at 6.)

6            As an initial matter, plaintiff's contention that the ALJ rejected the limitations

7    stated in Dr. Jones's Medical Source Statement "without any explanation or rationale" is

8    misleading and incorrect.  The ALJ specifically noted Dr. Jones's June 2008 Medical Source

9    Statement in the section of his decision discussing plaintiff's medical history (AT 19), and

10   expressly rejected portions of Dr. Jones's opinion that contradicted the RFC assessment:

11              The Administrative Law Judge note [*sic*] that the only contradiction to this
                conclusion, appears to be the opinion of a physician who in June 2008,
12              submitted a statement suggesting that the claimant can sit for 2 hours, in
                an 8 hour day (Exhibit 10F).  However, given the claimant's statements at
13              the hearing, and the lack of objective findings that support this limitation,
                the Administrative Law Judge rejects this opinion.
14

15   (AT 20.)  Thus, the ALJ provided an explanation for rejecting portions of Dr. Jones's Medical

16   Source Statement, and plaintiff's assertion to the contrary lacks support.[7]

17            Turning to the ALJ's rejection of parts of Dr. Jones's Medical Source Statement,

18   the undersigned notes that Dr. Jones's assessment of plaintiff's functional limitations is partially

19   contradicted by Dr. Vogus's May 2008 medical opinion and, accordingly, the ALJ was obligated

20   to provide only specific and legitimate reasons for rejecting Dr. Jones's opinions.  Dr. Vogus,

21   another of plaintiff's treating physicians, opined, in part, that plaintiff could stand/walk with

22   normal breaks for at least two hours in an eight-hour day, and sit continuously with normal

23

24   _____

25        [7]  The undersigned notes that, based on the statements made by the ALJ and the record,
         Dr. Jones necessarily is the physician referenced in the quoted text above.  The undersigned also
26       notes that the ALJ had previously found plaintiff's statements regarding his functional limitations
         not entirely credible.  Plaintiff does not challenge this adverse credibility finding.

1    breaks for eight hours in an eight-hour workday, but "must alternate" positions.[8]  (See AT 319.)

2         Turning to plaintiff's specific claims of error with respect to the rejection of

3    portions of Dr. Jones's Medical Source Statement, the undersigned concludes that the ALJ did

4    not commit error.  The ALJ properly discussed the conflicting evidence and credited one opinion

5    over another opinion of equal weight.

6         First, the ALJ did not err in crediting Dr. Vogus's opinion that plaintiff was able

7    to sit for up to eight hours if provided the option to alternate positions, over Dr. Jones's opinion

8    that plaintiff could sit for a maximum of two hours.  The ALJ set out a thorough summary of the

9    facts and conflicting clinical evidence, stated his interpretation of that evidence, and made

10   findings.  He discussed Dr. Vogus's and Dr. Jones's opinions regarding plaintiff's ability to

11   stand, walk, and sit in an eight-hour day.  (AT 18-19.)  He noted the contradictory nature of these

12   physicians' respective opinions as to sitting tolerance.  (AT 20.)  The ALJ rejected Dr. Jones's

13   opinion based on a lack of objective findings in support of a two-hour maximum sitting

14   tolerance.  (AT 20.)  And the ALJ specifically stated that "the record . . . reveals that given the

15   opportunity to change position as needed, that claimant is able to sit for at least 6 hours in a work

16   day."  (AT 20; see also AT 19 (stating in a discussion of plaintiff's credibility that "the record

17   does not contain any objective findings which reflect that if given the opportunity to change

18   position, the claimant can not [sic] for up to 6 hours, in an 8 hour day")).)   The ALJ also noted

19   that the record revealed no serious neurological involvement, muscle wasting, or atrophy usually

20   associated with pain and inactivity.  (AT 20.)  The ALJ's conclusion is supported by substantial

21   evidence in the record, and the ALJ appropriately resolved a conflict in the medical evidence.

22        Second, the ALJ did not err by ignoring "the 1 hour resting" period noted in Dr.

23   Jones's opinion.  As a factual matter, Dr. Jones did not opine that plaintiff required a one-hour

24

---

25   [8]  Dr. Vogus also opined that plaintiff's limitations rendered him "unfit for any regularly
     scheduled job."  (AT 319.)  The ALJ rejected that opinion on the grounds that such an opinion is
26   reserved for the Commissioner (AT 18), and plaintiff does not challenge this assessment.

rest break in an eight-hour workday.  He stated that plaintiff required a total cumulative rest

period, where plaintiff could lie down or recline in a supine position, of "<1 hr" (i.e., less than

one hour) in an eight-hour workday.  (AT 313.)  Moreover, Dr. Jones's statement indicates that

although plaintiff would require less than one hour of total rest during an eight-hour workday, "a

morning break, lunch period, and an afternoon break scheduled at approximately two-hour

intervals is sufficient."  (AT 313.)  As the Commissioner points out, plaintiff's need for rest is

accommodated by the normal morning break, lunch break, and afternoon break to which workers

performing sedentary work are entitled.  See Soc. Sec. Ruling ("SSR") 96-9p (July 2, 1996) ("In

order to perform a full range of sedentary work, an individual must be able to remain in a seated

position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period,

and an afternoon break at approximately 2-hour intervals."); Soc. Sec. Admin., Program

Operations Manual System ("POMS") § DI 24510.005(C)(2) ("Consider an 8-hour workday and

a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating

the ability to sustain work-related functions" (emphasis omitted).), available at

https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510005!opendocument (last visited August 26,

2010) (copy on file).[9]

          Third, the Commissioner correctly argues that the ALJ did not commit reversible

error to the extent that he did not expressly incorporate Dr. Jones's statements regarding

plaintiff's postural limitations.  Dr. Jones indicated that plaintiff could occasionally balance

"when standing/walking," and selected the response "Rarely/None" in reference to plaintiff's

ability to stoop.[10]  (AT 314.)  The ALJ's RFC stated that plaintiff could "occasionally perform

_____

[9]  The Ninth Circuit Court of Appeals has stated that "[t]he POMS does not have the
force of law, but it is persuasive authority."  Warre v. Comm'r of Soc. Sec. Admin, 439 F.3d
1001, 1005 (9th Cir. 2006).

[10]  Although plaintiff suggests that Dr. Jones's statement separately addressed plaintiff's
ability to bend and kneel, such a suggestion is somewhat misleading.  Dr. Jones did not address
plaintiff's ability to kneel.  And with respect to bending, the definition of "stooping" provided on

10

1  activities requiring overhead reaching, stooping, crouching, and kneeling." (AT 18.)  Even

2  assuming that the ALJ erred by finding that plaintiff could stoop "occasionally" and by not

3  specifically explaining why he rejected Dr. Jones's opinion that plaintiff could stoop rarely or

4  never, such error would be harmless because sedentary work requires infrequent stooping.  See

5  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).[11]

6          Fourth, the ALJ did not err by "ignoring" the date of onset, October 5, 2005,

7  offered by Dr. Jones in his Medical Source Statement.  The ALJ adopted Dr. Jones's opinions

8  regarding plaintiff's functional limitations that were supported by the record, properly rejected

9  others, and concluded that plaintiff was not disabled until his fiftieth birthday.  Because the

10  ALJ's decision is supported by substantial evidence and free of legal error, the date of onset

11  offered by Dr. Jones is not by itself indicative of any functional limitation.  Accordingly, the ALJ

12  did not need to specifically address the date of onset assigned by Dr. Jones.

13  ////

14

15  the form filled out by Dr. Jones included the following: "bending the body downward and
    forward by bending the spine at the waist." (AT 314.)   Thus, bending was incorporated in Dr.
16  Jones's opinion regarding plaintiff's ability to stoop.

17          [11]  In Stubbs-Danielson, the Court of Appeals stated that "to the extent the ALJ's RFC
    finding erroneously omitted Stubbs-Danielson's postural limitations (only occasional balancing,
18  stooping, and climbing of ramps and stairs), any error was harmless since sedentary jobs require
    infrequent stooping, balancing, crouching, or climbing." 539 F.3d at 1174.  The court cited to
19  SSR 96-9p and stated that "postural limitations related to climbing, balancing, crouching, would
    not erode the occupational base for a full range of unskilled sedentary work; most unskilled
20  sedentary occupations require very little to occasional stooping." Id.

21          The undersigned also notes that plaintiff's counsel at the hearing, who is plaintiff's
    counsel in this court, stated no disagreement with the ALJ's RFC limitations related to stooping
22  when it was posed to the vocational expert.  Indeed, when plaintiff's counsel posed hypothetical
    questions to the vocational expert, he did not alter any of the ALJ's limitations with respect to
23  postural limitations.  (See AT 61-65.)  He only altered limitations related to sitting, standing, and
    walking.  This further supports the conclusion that any failure by the ALJ to explain his rejection
24  of the stooping limitation reported by Dr. Jones was harmless error, if error at all.  Furthermore,
    plaintiff does not contend in his motion for summary judgment that adding a limitation of
25  stooping rarely or never would undermine the ALJ's hypothetical to the vocational expert and the
    ultimate disability determination; he again only raises the limitations related to sitting, standing,
26  and walking.  (Pl.'s Mot. for Summ. J. at 6.)

IV.    CONCLUSION

      For the reasons stated above, IT IS HEREBY ORDERED that:

      1.     Plaintiff's motion for summary judgment (Dkt. No. 17) is denied.

      2.     The Commissioner's cross-motion for summary judgment (Dkt. No. 18) is granted.

      3.     The Clerk of Court enter judgment in favor of the Commissioner.

      IT IS SO ORDERED.

DATED: September 1, 2010


KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

12